IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES ANTERIO SIMS, ) | Civil Action No.: 4:07-cv-3863-CMC-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | |
| ) | REPORT AND RECOMMENDATION |
| DOCTOR M. BEINOR; and NURSE ) | |
| BARNNEAL, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, James Anterio Sims ("plaintiff/Sims"), filed this action under 42 U.S.C. § 1983[1] on November 30, 2007. At all times relevant to the allegations in the plaintiff's complaint, he was incarcerated within the South Carolina Department of Corrections. Plaintiff alleges that his constitutional rights were violated due to medical indifference. On July 28, 2008, defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with a memorandum and exhibits in support of that motion (document #22). Because the plaintiff is proceeding pro se, he was advised on or about July 29, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response in opposition on August 8, 2008.

## II.  DEFENDANT NURSE BARNNEAL

Defendants assert that plaintiff names defendant "Nurse Barnneal" in his complaint as someone who denied him medical attention. Plaintiff asserted in his complaint that he was told by Nurse Barnneal to go to sleep because she wasn't going to see him for his chest pains. (Complaint). However, Defendants assert that plaintiff does not provide a date for this allegation and there is no record of a Nurse Barnneal in plaintiff's medical chart. In his affidavit, Dr. Beinor states that he is not aware of an employee at SCDC by the name of Nurse Barnneal. (See Beinor affidavit). Therefore, defendants argue this defendant must be dismissed as plaintiff has failed to name a proper person.

Plaintiff has not provided any evidence or specifics regarding this named defendant. Therefore, it is recommended that this defendant be dismissed.[2]

---

[2] Defendants submitted the affidavit of Debbie Geiger who attests that she is a Licensed Practical Nurse employed by the SCDC and works at the Kirkland Infirmary. She attests that she reviewed the allegations in plaintiff's complaint and that there is no Nurse Barnneal. However, she attests that the encounter plaintiff references in his complaint is similar to an encounter she had with plaintiff. Nurse Geiger attests that she was involved in a incident on June 23, 2007, that appears to be what plaintiff is referring to. Nurse Geiger asserts that she received an after hours call from a correctional officer stating that plaintiff was complaining of chest pains. She states that she followed standard protocol by asking the officer his symptoms who stated that plaintiff was not having difficulty speaking, was not sweating, and had no other noticeable symptoms. Geiger attests that she reviewed plaintiff's medical chart and noted that he had been seen on numerous occasions for complaints of chest pains with no symptoms and that he had medication for chest pains that he could take as needed. Therefore, based on her knowledge of plaintiff and his medical records, she advised the officer to tell plaintiff to take his medication and try to rest, and that he could take Maalox or Mylanta since his chest pains did not seem to be cardiac related. Nurse Geiger attests that she further advised the officer to contact medical if there were any

2

### III.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs and condition of confinement claims. Plaintiff alleges that he was denied medical care for chest pains. Plaintiff's complaint is not specific as to dates and/or time frames. Plaintiff alleges as follows, quoted verbatim:

> I went to medical about having chestpains and for the pills they got me on Nitroglycerin and Isosorbine 30 mg tab and they told me that I am on the list to go to a heart Doctor to get tests done to see where the pain is coming from so they can do something about it but they didn't call me about my problem being treated and they keep telling me to sign up for sick call but they end up taking me off the List to be seen and so I told medical that I am still having chestpains all the time and they keep telling me that I am on a list to see a Heart doctor about my problem but I haven't seen or giving a OTR to go to the holding cell to be taking to my doctor treatment and one more thing I was not giving no food to eat and they took my mattress from me for 2 days and I was sleeping on steel all them days and they tell me that they are going to take it again for 3 days thats 72 hours so I can be on steel again and one more thing my Freedom was taking from me and I was sprayed in the face by C/O Ms. Turner 2 times for telling her that I had a fly in my food and she told me to put my hand back in the room before she gas me for standing with my hand in the door and then she told the Lt. that I refusing to obey a direct order and then they told me I will be place on PHD until my hearing date comes up and I was telling the C/Os that I was having chestpains and they told me to lay down and sign up for sick call again so I told them one more time that I was still having chestpains and that is when the C/O call medical and told them that I was still having chestpains and that is when they call me to come to medical for an EKG to see what he says about my chestpain and where they're coming from so it can be treated ASAP and one more thing I was told by Nurse Barnneal to go to sleep because she wasn't going to see me for my chestpains.
>
> I would like to get a few dollars for pain and suffering because medical is not treating me for my problem right and that I am being mistreated by the C/O's and Lt. and Sgts

---

further concerns and that she did not refuse to see plaintiff, but determined that it was not an emergent situation. (See Geiger affidavit, doc. # 22-3).

and wardens and majors too so please help me please.

(Complaint).

As stated, defendants filed a motion for summary judgment on July 28, 2008.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the

movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C.  MEDICAL INDIFFERENCE

As previously discussed, plaintiff alleges that defendants were deliberately indifferent to his medical needs by denying him treatment for chest pains.

Defendants submitted the affidavit of Dr. Michael J. Beinor who attests that he is a physician employed by the SCDC and is currently employed as the Medical Director of the Reception and Evaluation Center at Kirkland Reception and Evaluation (R & E). Beinor attests that the purpose of the Reception and Evaluation Center is to examine inmates upon admission to the South Carolina Department of Corrections, assess them for any medical problems that they may have, and then move them to another institution. Beinor asserts that inmates do not stay at the Reception and Evaluation center for very long as it is considered a short term facility. Beinor attests that he has reviewed the allegations in the plaintiff's complaint, his medical file which is attached as Exhibit A, and the medial records from Tuomey Hospital related to plaintiff attached as Exhibit B.

Beinor attests that based on plaintiff's medical records, he has been seen in medical over 400 times since 2002, and has also been seen by several hospitals and cardiologists for consultation. During all of the visits, Beinor states that plaintiff never had objective symptoms to match his complaints of cardiac related chest pains. Beinor attests that a review of the plaintiff's records from

5

Tuomey Hospital reveals plaintiff had reported that he has had these complaints since he was two years old, has never had a serious problem related to the complaints, has not had any procedures or treatment for them since complaining of them beginning at age two.

Beinor attests that as to the allegations that plaintiff has not been getting his food, having his mattresses taken, and has been sprayed by officers, he is not responsible for any of the allegations as he is solely a medical doctor involved in treating inmates for medical problems and these allegations do not relate to medical indifference. Beinor also attests that while plaintiff has named a Nurse Barnneal as a defendant, there is no mention of a nurse Barnneal in the medial records and he is not aware of a nurse by that name working at the SCDC.

Beinor attests that based upon a review of the medical records, his first involvement with plaintiff was on December 22, 2004, when the plaintiff was admitted to Kirkland R &E, that he did not see plaintiff at the time, but did note that he needed an x-ray of his right shoulder. Plaintiff was transferred to Allendale Correctional Institution on January 31, 2005, and Dr. Beinor had no further dealing with him. Beinor attests that the only dealing he had with plaintiff during the short time he was at Kirkland R & E was signing off on several entries where he was seeking treatment for problems with his hand.

Based on the medical records, Beinor attests that he did not see plaintiff again until he was readmitted to the SCDC on January 26, 2006, at which time he reviewed plaintiff's medical file which noted a long history of chest pains without objective symptoms. Beinor also attests that there were notes that plaintiff stated he complained of these problems since he was a child. Beinor also noted that plaintiff had a history of prior drug use and a history of mental health problems. Beinor states that he did not have any other dealings with plaintiff after his initial assessment during his

6

incarceration and that plaintiff was transferred to Broad River Correctional Institution on March 14, 2006.

Beinor attests that his next involvement with plaintiff was when he was readmitted to the SCDC on June 12, 2007, and admitted to Kirkland R & E, at which time he examined his records and noted his lack of objective problems to match his complaints regarding cardiac problems. Beinor attests that when plaintiff came to medical on June 18, 2007, requesting an EKG and claiming chest pains, he ordered an EKG that was performed on June 21, 2007 and repeated on June 23, 2007, with normal results. Beinor attests that no other treatment was necessary since the EKG was normal. According to the medical records, Beinor avers that on June 21, 2007, plaintiff was referred for a cardiology workup by the nurse practitioner even though he did not think a consult was necessary based upon the history and symptoms. However, Beinor states that the consult was to be handled by the doctor at the institution where he was being transferred. Beinor attests that plaintiff continued to come to medical complaining of chest pain and was seen by other nurses and physicians and at no time did he have objective signs to match his complaints of chest pains. Beinor states that based on his examinations, plaintiff had normal vital signs each time he was examined which would not be the case if he had cardiac related chest pains. Beinor attests that he signed off on an entry on July 7, 2007, which indicated plaintiff had an EKG showing normal heart rate with overall good conductivity and no problems requiring further treatment. Beinor asserts that on July 11, 2007, it was noted that plaintiff's problems were likely related to esophageal spasm or reflux which can cause similar complaints. Beinor signed off on an entry on July 15, 2007, where plaintiff was complaining of chest pains without any symptoms and an EKG was performed with normal results which required no further treatment. On July 16, 2007, Beinor states he signed off on an entry where plaintiff

complained of chest pains without symptoms and an EKG was done three times which was normal two times and showed a flutter the third time which was a normal rhythm. Beinor notes that plaintiff refused any further treatment or medications. Beinor next signed off on an entry on July 17, 2007, where plaintiff complained of chest pain but had no objective symptoms to match any type of cardiac complaints. (Beinor affidavit). On July 25, 2007, the medical records note that plaintiff was taking excessive pills which could cause chest pains and the notes of July 29, 2007, state plaintiff was no longer on Nitroglycerin due to abuse. (Beinor affidavit). Beinor attests that he signed off on an entry on August 9, 2007, when plaintiff was brought to medical with complaints of chest pain, was given an aspirin and told to return to medical the following day. On August 10, 2007, plaintiff again complained of chest pain after his sixteenth (16) EKG which had all been within normal limits. Beinor attests that he reviewed the EKG and determined no further treatment was necessary and that plaintiff was likely malingering. Beinor attests that plaintiff was then transferred to Allendale Correctional Institution where Dr. Byrne took over his care and Beinor attests he had no further dealing with plaintiff after that point. Dr. Beinor attests that "This inmate has had no objective symptoms to indicate any cardiac related problems. It appears his complaints are related to reflux problems. Based upon my review of this inmate's medical records, he has at all times been tested in accordance with generally accepted medical practices." (Affidavit p. 5).

Defendants submitted the affidavit of Dr. Thomas Byrne (Byrne) who attests that he is employed by the SCDC and has reviewed the allegations in the complaint and plaintiff's "voluminous" medical records. Byrne attests that he has been involved in the treatment of the plaintiff and is very familiar with him. Byrne attests that since 2002, plaintiff has been seen in medical over 400 times, even though he has been out of the SCDC on more than one occasion for

over one year during this time and has continually complained about chest pains without objective symptoms. Byrne also attests that he has personally examined plaintiff on numerous occasions and has been unable to find any objective symptoms to match his complaints. Byrne attests that plaintiff's medical records also show that he has had several outside consultations and workups by both hospitals and cardiologists which never found any problems other than atypical chest pain and none required follow up care. Byrne attests that he first became involved with plaintiff when he was brought to Allendale Correctional Institution on January 31, 2005, and he was a no-show for an appointment with Byrne on February 14, 2005. Byrne states that he examined plaintiff on February 17, 2005, and noted that he had been in the hospital in January, February, April and June 2003 complaining of chest pains with no objective indication of a problem, no required follow-up each time, and that a stress test performed in September 2003 was negative. Byrne avers that he found no heart related problems, that he was aware plaintiff had advised different medical staff that he had been complaining of the same type problems since childhood, and plaintiff refused to sign a release to allow SCDC to obtain his outside medical records. Byrne attests that plaintiff was released from SCDC in 2005 and returned in June 2007.

Byrne avers that plaintiff returned to Allendale Correctional Institution in August 2007, and he examined him on August 16, 2007, due to complaints of chest pain again even though plaintiff was in no distress and his complaints were more concentrated on stomach pain. Plaintiff inquired about a cardiology consult and noted that he had previously had an extensive cardiac workup with a normal EKG which indicated no heart related problems. Based on his complaints and symptoms, Byrne states he did not feel that another cardiology appointment was necessary but did schedule a chest x-ray to rule out other problems. Plaintiff was seen again on August 18, 2007, and another

EKG was ordered which was within normal limits. A chest x-ray was performed on August 21, 2007, at Byrne's request which was unremarkable. Byrne attests that during this time plaintiff was placed on lock-up by the correctional staff due to his behavior and non-emergent outside appointments are postponed while an inmate is on lock-up due to security reasons. Thus, plaintiff's appointment was postponed. (Byrne affidavit, defendants' memorandum). Byrne attests that he determined that the outstanding cardiology consult was not necessary based on plaintiff's age and objective symptoms did not need to be rescheduled. Byrne asserts that the medical records note that while plaintiff was on lockup, the nursing staff saw him several times, each time he did not have any symptoms to match his complaints, and he refused treatment from the nurses. Dr. Byrne attests that "[w]hile there have been several notations about trying to schedule a follow up cardiology consult, it is my medical opinion that the inmate has no need for such a consult. He has no objective symptoms to indicate any cardiac related problems, and all of his prior consults and test results have been negative. If this inmate were to present to medical with any problems of a cardiac nature, he would be handled in accordance with proper medical procedures." (Byrne affidavit, p. 4). Byrne avers that he does not believe plaintiff has ever had any cardiac related problems, that his complaints are related to reflux problems, and that he has been treated in accordance with the appropriate standard of care. (Byrne's affidavit).

In his response to summary judgment, plaintiff asserts that he needs the court to appoint an attorney to help him and to get his records from the county jail to show that he does have a heart problem. Plaintiff asserts in his response that sometimes he feels like his heart is going to stop and he will be dead before medical gets to him. (Plaintiff's response).

The undersigned finds that the plaintiff fails to show that defendant was deliberately

indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty

of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. As noted from the affidavits and plaintiff's medical records, plaintiff was examined on numerous occasions over the course of his incarcerations, provided medication, given x-rays, and numerous EKGs all within normal limits. (See Byrne and Beinor affidavits). Based on the affidavits and records, plaintiff has been examined by outside consultations and hospital examinations for symptoms of chest pain and cardiologists who found him not to have heart related problems and did not require follow up treatment or examinations. Further, plaintiff was scheduled for a cardiology consult but it had to be postponed due to him being placed on lock up for behavior problems. Thereafter, Dr. Byrne decided that the appointment did not need to be rescheduled due to the lack of symptoms plaintiff exhibited. (See affidavit of Dr. Byrne). Plaintiff named Dr. Beinor as the defendant in this action who examined plaintiff, had EKGs performed, and who determined that plaintiff did not have symptoms to match

his complaints. There is no evidence that Dr. Beinor denied plaintiff medical treatment or care and did not have any contact with plaintiff once he was transferred from the Kirkland R & E to the Allendale Correctional Institution. Plaintiff has not presented any medical evidence to show that he suffered any permanent injury as a result of his allegations.

As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury.  Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by the defendant "shocks the conscious" as required by Miltier v. Beorn, supra.  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action.  Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by the defendant in this action. For the above stated reasons,

summary judgment should be granted in favor of defendants on this issue.[3]

### D. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

---

[3] As to plaintiff's allegations of conditions of confinement, it is recommended that these claims be dismissed as plaintiff has only named Dr. Beinor as a party defendant who is solely a medical doctor and these allegations do not relate to his medical care. Furthermore, plaintiff has not alleged or shown that Dr. Beinor had any involvement in his allegations related to his conditions of confinement.

(1985).

In <u>Torchinsky v. Siwinski</u>, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for <u>Harlow</u> qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

<u>Torchinsky</u>, 942 F.2d at 260-261. (Citations Omitted).

The <u>Torchinsky</u> court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The <u>Torchinsky</u> court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Sevigny v. Dicksey</u>, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Collinson v. Gott</u>, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of <u>Swanson v. Powers</u>, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the

defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. Plaintiff fails to show that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment be granted on the basis of qualified immunity.

## IV. CONCLUSION

Based on the reasons stated above, it is **RECOMMENDED** that the motion filed by the defendants for summary judgment (document #22) be **GRANTED IN ITS ENTIRETY** and that

this matter be **DISMISSED** as no constitutional or statutory rights have been violated.

                         Respectfully submitted,

                         s/Thomas E. Rogers, III
                         Thomas E. Rogers, III
                         United States Magistrate Judge

December 17, 2008
Florence, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**